UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUSTIN JAMES MEDING,

               Plaintiff,

      v.                                           **DECISION AND ORDER**
                                                   18-CV-6532S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____


      1.     Plaintiff Justin James Meding brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits under Title II of the Act and supplemental security income under Title XVI of the Act.  (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     Plaintiff protectively filed his applications with the Social Security Administration on February 26, 2015. Plaintiff alleged disability beginning June 20, 2014, due to anxiety, bipolar disorder, depression, and agoraphobia. (R.[1] at 68, 219.) Plaintiff's applications were denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On December 15, 2016, ALJ Rosanne Dummer continued a scheduled videoconference hearing to allow Plaintiff to obtain representation. On April 18, 2017, ALJ Dummer held a videoconference hearing at which Plaintiff, represented by his attorney, appeared and testified. Vocational Expert Mark Pinti also appeared and testified by telephone.  At the time of the hearing, Plaintiff was 30 years

_____
[1] Citations to the underlying administrative record are designated as "R."

old, with a twelfth-grade education and prior work experience as a laborer, front desk clerk, cashier, and cook. (R. at 67, 76, 220.)

3.      The ALJ considered the case *de novo* and, on April 27, 2017, issued a written decision denying Plaintiff's applications for benefits. (R. at 13-28.) On May 18, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on July 17, 2018, challenging the Commissioner's final decision.[2]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 13.) Plaintiff filed a response on May 13, 2019 (Docket No. 14), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's April 27, 2017 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided

into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering his or her physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76

L. Ed. 2d 66 (1983).

10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth

above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since June 20, 2014. (R. at 15.)  At step two, the ALJ found that Plaintiff has the

severe impairments of anxiety and depression. Id. At step three, the ALJ found that

Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the nonexertional limitations that that Plaintiff could

> understand, remember, and carry out instructions for routine, repetitive tasks commensurate with unskilled work. He could tolerate occasional brief and superficial task-related and work oriented contact with coworkers and supervisors; he could tolerate brief and superficial contact on a rare to none basis with the public. He could sustain attention and concentration for two-hour segments of time in an eight-hour day. [He] could adapt to changes in the work place for routine, repetitive tasks.

(R. at 17.)

12. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 26.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 26.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 27.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ erred in discounting the opinions of a consultative examiner and of Plaintiff's treatment providers and (2) the ALJ created a gap in the record by giving no more than "some" weight to any opinion. (Docket No. 10-1 at 7, 13-14). For the reasons that follow, Plaintiff's arguments are unavailing.

14. Plaintiff first argues that the ALJ erred in giving only limited weight to the opinions of a consultative examiner and Plaintiff's treatment providers. Defendant argues

that the ALJ provided valid reasons for the weight she gave to all the opinions she considered. Plaintiff's argument is unavailing.

15.     A treating physician's opinion is entitled to controlling weight in cases where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The reasons for denying a physician's opinion controlling weight must be set forth in the ALJ's opinion. Id.

16.     When a physician is not a "treating source," the ALJ must consider (1) the examination and treatment relationship, including its length, nature, and extent; (2) the supportability of the opinion; (3) the consistency of the opinion with the record as a whole (4) the specialization of the medical source; and (5) other factors, such as the source's knowledge of disability programs and his or her familiarity with the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c).  An ALJ should consider the opinions of nonmedical sources, such as social workers, based on the same factors. See Williams v. Colvin, No. 15-CV-1619-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016). As with medical sources, an ALJ is "free to conclude" that the opinions of social workers or nurse practitioners are "not entitled to any weight," but the ALJ must explain that decision. Rivas v. Berryhill, No. 1:17-CV-05143 (ALC), 2018 WL 4666076, at *10 (S.D.N.Y. Sept. 27, 2018).

17.     The ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order); see also 20 CFR § 404.1545(a)(3) ("[The ALJ] will assess your residual functional capacity based on all of the relevant medical and other evidence").  In doing so, "[t]he [ALJ] is entitled to rely not only on what the record says,

but also on what it does not say." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (2d Cir. 1983). "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." <u>Barry v. Colvin</u>, 606 Fed. Appx. 621, 622, (2d Cir. 2015) (summary order) (citing <u>Talavera v. Astrue</u>, 697 F.3d 145, 153 (2d Cir. 2012)).

18.    Here, the ALJ gave "limited weight" to a consultative examiner's opinion, and "minimal weight" to treating sources insofar as they opined on Plaintiff's work-precluding conditions. (R. at 24, 25.) In all instances, the ALJ based her decision on the proper factors.

19.    Dr. Yu-Ying Lin examined Plaintiff on May 18, 2015, for a disability assessment. Dr. Lin opined that Plaintiff was mildly limited in maintaining attention and concentration, moderately limited in maintaining a regular schedule and performing complex tasks, and moderately to markedly limited in relating to others and appropriately dealing with stress. (R. at 291-93.) The ALJ gave limited weight to Dr. Lin's opinion because it was based on a one-time evaluation. (R. at 23). The ALJ additionally noted that Dr. Lin's findings of moderate to marked limitations in maintaining a schedule, relating adequately with others, and dealing with stress were inconsistent with the Plaintiff's ability to care for his infant son. <u>Id.</u>[3] The nature and length of treatment relationship and the consistency of the opinion with the rest of the record are proper factors for an ALJ to consider, and the ALJ did not err in considering them here.

---

[3]While Plaintiff testified at the hearing that he did not care for his son while his fiancée worked, (R. at 45-46), he told Dr. Lin on May 18, 2015 that he spent his days caring for his son. (R. at 290.) He also explained his failure to attend a scheduled appointment because of his child's need for care. (R. at 285.)

20.     The ALJ gave minimal weight—to the extent work-precluding limitations are shown—to six opinions, five of which were made on forms for state disability benefits. The ALJ found that the record did not substantiate the limitations, "given such brief and infrequent treatment." (R. at 25.) This finding was proper.

21.     Dr. Kristina Luna met Plaintiff once, on June 10, 2014, and filled in a check-the-box psychological assessment. (See R. at 396-401.) She opined that Plaintiff was moderately limited in his ability to perform complex tasks independently, and in maintaining attention and concentration for rote tasks. (R. at 399.) She expected his symptoms to last for 6 months. (R. at 400.)

22.     Social Worker Sara Hopkins completed a check-the-box psychological assessment at her first appointment with Plaintiff on September 8, 2014. (R. at 403.) She noted that Plaintiff took no medication, and observed his mental status as "oriented, alert, cooperative, anxious, future oriented, well-groomed and dressed." Id. Hopkins opined that Plaintiff had normal functioning in maintaining grooming, and was moderately limited in following, understanding and remembering instructions, performing simple tasks independently, and attending to a routine and maintaining a schedule. Hopkins found Plaintiff very limited in maintaining attention and concentration, and in performing low stress and simple tasks. (R. at 404.) His symptoms were expected to last for 6 months. Id.

23.     At Plaintiff's first meeting with psychiatrist Dr. Michael Simpson on November 24, 2014, Dr. Simpson observed that Plaintiff's mental status was "alert, oriented, cooperative, very friendly," with no current delusional content or current

hallucinations. (R. at 406-07.) Dr. Simpson noted, "I do question if he is over-endorsing symptoms." Id.

24.     Melissa Shoemaker, Social Worker, met Plaintiff on August 18, 2015, and filled in a psychological assessment form. Noting that Plaintiff had only been seen twice, Shoemaker checked boxes indicating normal function in grooming, and that Plaintiff was moderately limited in his capacity to understand directions, perform simple and complex tasks independently, regularly attend to a routine, and perform low stress tasks. (R. at 410-11.) Shoemaker opined that Plaintiff was very limited in his ability to maintain attention and concentration, and that the expected duration of these symptoms was 3 months. (R. at 411.)

25.     Craig Barnes, a social worker, saw Plaintiff on January 11, 2016. He noted that Plaintiff had "just started" treatment. (R. at 414.) Barnes opined that Plaintiff had normal functioning in maintaining hygiene and grooming, and was moderately limited in the capacity to perform simple and complex tasks independently, maintaining a schedule, and performing low stress and simple tasks. (R. at 415.) Barnes found Plaintiff to be very limited in his ability to follow instructions and maintain attention and concentration. Barnes expected these limitations to last 6 months. Id.

26.     Rebecca Allen, LMHC, filled out an opinion form on January 27, 2017, after seeing Plaintiff three times. (R. at 419.). She noted that he had no medications currently prescribed. She opined that he had normal functioning in basic grooming and was moderately limited in the ability to follow instructions, perform tasks independently, and perform low stress and simple tasks. She found him very limited in his ability to maintain

attention and concentration and to maintain a schedule. (R. at 420.) She expected the condition to last 3 months. Id.

27.     The ALJ discounted all these opinions to the extent they found work-precluding limitations, "given such brief and infrequent treatment." (R. at 25.) Because the length of treating relationship is a factor the ALJ must consider, and because, here, the most any provider saw Plaintiff was three times, the ALJ committed no error giving little weight to these opinions. This Court also notes the check-the-box nature of all the opinions, exception Dr. Simpson's. (R. at 406.) In general, the more explanation a provider gives, the more weight an ALJ may give to that opinion. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Here, with the exception of Dr. Simpson's, the rejected opinions were rendered by checking boxes on a standard form, with little explanation of their bases. (See R. at 399, 403, 404, 411, 415, 420.)

28.     The ALJ also found that the limitations in the opinions were not supported by a record that showed that Plaintiff did not pursue consistent treatment or accept medication to alleviate any of his conditions. (R. at 21.) ("The record is replete with noncompliance with treatment.") She noted that Plaintiff tended to schedule appointments, get forms filled out, and then not return for follow up. (R. at 25.) For example, after psychologist Dr. John Amos declined to fill out Social Security assessment forms for him, Plaintiff did not attend a second appointment. (R. at 425.) The ALJ also noted that Plaintiff refused or did not take medication. (R. at 25; see also R. at 351, 454.)

There is no evidence of Plaintiff pursuing consistent care for these allegedly disabling impairments. It was not error for the ALJ to consider this evidence of lack of treatment in formulating her opinion.

29.    Plaintiff next claims that the ALJ erred in reaching an RFC in the absence of a medical opinion that received more than "some" weight. Defendant argues that the ALJ properly reviewed the entire record in formulating her RFC. Plaintiff's argument is unavailing.

30.    The Plaintiff has the burden of proving disability. 20 C.F.R. § 404.1512(a). See also Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). The law provides that an ALJ is permitted to assess a claimant's RFC when the record contains enough evidence from which an RFC can be determined. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order). In deciding a disability claim, an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).

31.    The ALJ is not bound to base RFC on any one medical opinion, but may rely on the record as a whole. 20 C.F.R. § 404.1545(a)(3). Where the record contains sufficient evidence from which ALJ could assess a claimant's RFC, a medical source statement or medical opinion is not necessarily required. Pellam v. Astrue, 508 F. App'x 87, 91 (2d Cir. 2013).

32.    Here, ALJ properly considered the evidence before her, and the RFC properly accounts for the limitations found in Plaintiff's medical record. The ALJ found that Plaintiff has a "mild limitation" in his ability to understand, remember, or apply information, and a "moderate limitation" in his ability to interact with others and to

concentrate, persist, or maintain pace. (R. at 16-17.) She found no limitation in adapting or managing himself. (R. at 17.) In her RFC discussion, the ALJ considered the clinical observations of treatment providers as well as Plaintiff's activities of daily life, such as caring for his child, performing self-care, watching television, and writing. Based on Plaintiff's limitations, the ALJ limited Plaintiff to unskilled, routine work, with only occasional contact with supervisors and coworkers, and an attention span of only 2 hours at a time. This RFC is consistent with the record, and is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, this Court finds that substantial evidence supports the ALJ's determination. Therefore, remand is not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      December 9, 2019
              Buffalo, New York


                                  s/William M. Skretny
                                WILLIAM M. SKRETNY
                        United States District Judge